# IN THE COURT OF APPEALS OF IOWA

No. 19-1616
Filed May 12, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**KOURTNEY SHONTEZ HALL,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.

Kourtney Hall appeals his judgment and sentence for two counts of

suborning perjury and two counts of obstructing prosecution. **AFFIRMED.**

John J. Sullivan of Sullivan Law Office, P.C., Oelwein, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

Kourtney Hall appeals his judgment and sentence for two counts of suborning perjury and two counts of obstructing prosecution. He challenges (1) the sufficiency of the evidence supporting the jury's findings of guilt; (2) the admission of video evidence; and (3) the denial of his new trial motion.

## I. Sufficiency of the Evidence

Hall argues "[t]here was insufficient evidence to support the jury's verdict that [he] suborned perjury" and "obstructed prosecution." "In evaluating the sufficiency of the evidence, we consider whether 'the finding of guilt is supported by substantial evidence in the record.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted).

### A. Suborning Perjury

The jury was instructed the State would have to prove the following elements of suborning perjury:

> 1. On or about the afternoon [and evening] of May 5th, 2019, the defendant reasonably believed that [a woman] would be placed under oath to make a statement of fact.
> 2. The defendant "procured" or offered an "inducement" to [the woman] with the "specific intent" that she then conceal "material" facts known to her.

The jury was further instructed, "'Procure' means to initiate or bring about an event; to cause something to be done; to contrive or acquire," and, "'Induce' or "inducement" means to offer something of benefit or value or a reason which would influence, persuade, coax, encourage or invite a person to act."

A reasonable juror could have found the following facts. A woman who once dated Hall had multiple virtual visits with him while he was housed at the Polk

County Jail. The woman was an important witness in another criminal case involving Hall. She was subpoenaed to have her deposition taken in that case. She testified she "was pretty stressed out, but [she] wasn't going to go against the law and not do it, you know, because [Hall] was [her] boyfriend at the time." She understood she "could get in trouble by the law" if she did not show up.

The day before the deposition, the woman had two video visits with Hall. During the first visit, which was recorded and admitted, Hall made the following statements:[1]

> Just because you don't go to church doesn't mean that you're gonna go to jail or anything is going to happen to you, you know what I'm saying. Like obviously, you didn't go to church last week and nothing happened, you know what I'm saying. So if you don't go to church this week, nothing will happen . . . . Like, you know like, people try to scare you and stuff like that and tell you that something bad will happen to you and blah blah this just cuz you don't go to church, you know what I'm saying.
> . . . .
> I'm being honest, nothing will happen to you. You know those religious people, they crazy, you know. They are just, oh my god so religious . . . . They think everyone is going to hell. I don't want to go to hell. You know what I'm saying. But just because you don't go to church does not mean, you didn't go to church last week on Lent Friday. You know. So why would you get in trouble if you didn't go this Sunday.
> . . . .
> Listen so I went to court on Friday and since nobody, you already know, everything, they said they have to drop a charge, and then they said if the same thing happens on Monday, then everything gets [] dropped. I am so [] excited. So don't say anything, you know what I'm saying, I'm just telling you, like it is amazing. And I know you are not gonna go to church, I know you aren't gonna go to church so, but this means you don't go to church, doesn't mean you are going to hell. I want you to remember that.
> . . . .

---

[1] The video was not formally transcribed. We have informally attempted to capture the gist of the conversation.

Look you haven't done anything in your entire life . . . they are not gonna just gonna clink clink. You are not going to hell.

. . . .

I would never let anything happen to you. You know how I am. If that was the case, I would be like go to church, go to church, you know what I'm saying. . . . I'd be damned if I let anything happen to you, except for me being gone, I guess I did let that happen, that makes me feel bad. I feel like a piece of shit, you know what I'm saying. I been missing you man. I miss you a lot. You are like so [] like you look like one of those Laguna Beach girls over there.

. . . .

You have never been to church right, but see, why if you haven't been to church now, why start, you know, why would you start, that's all I'm saying. It's happened to me before, and you know I'm not going to church, and nothing ever happened to me and I had a little bit of a record.

. . . .

I'm just telling you my personal experience, and everybody in here, you know where I'm at. Nothing, when you don't go to church, nothing happens, you know what I'm saying. Like it's just a fact. It's a fact.

. . . .

I'm just excited, like Monday, tomorrow, if everything goes [] good, I will be [] home. Quick as hell. . . . [I]f everything goes good . . . I'll be coming home.

. . . .

Then I get to [] be with the person I love the most. . . . And make up. Can I just kiss and make up please. Can you allow me to do that? Please, just please. I'm being honest. You remember what somebody else told you about church and what happened. . . . Listen you didn't go to church last week and nothing happened right.

During a second visit on the same day, Hall said:

Where's the first place you want to go when we get out? That's what I think about.

. . . .

You aren't going to church tonight are you? . . . Babe, stop doing that, don't scare me like that. Listen, I promise you, I don't know how many different ways, how many different people have to tell, I even talked to the CO about it, and he said everything is cool. And I don't really, [expletive] the CO, I trust my lawyer.

. . . .

Everything will be fine babe, stop worrying about it. Get a good night sleep. . . . I'll be home soon . . . you will be good. I promise. You know I would never let anyone hurt you . . . it hurts

my heart every day. That's why I'm trying to do everything so I make sure I'm home with you. Like even.

. . . .

It's easy as hell, I don't know why you are tripping. . . . I've already talked about this . . . I hate I have to reiterate myself over and over again. You didn't go to Sunday last week and nothing happened to you. . . . I don't understand.

. . . .

Listen, it doesn't matter, babe, you still had it, and you didn't go. . . . It doesn't matter. Nothing happened, just like nothings gonna happen when you didn't go to church today, you know what I'm saying. I don't know why you are tripping.

. . . .

I shouldn't have to understand . . . I told you my experience, and nothing [] happened to me. I'm telling you other people's experience you know about going to church . . . and nothing happened. But I don't understand why you don't believe me. . . . I don't understand, what do I have to do? . . . [Y]ou should not be crying, this should be like . . . oh ya tomorrow I'm gonna have a good day at [] court and I'm gonna be [] out asap. And I'm gonna be able to see you. It's just not that hard.

. . . .

Please, just please don't be selfish. Please. You got to go to a concert, you got to spend time with your family the whole weekend, spend time with your family, and you are over here crying and nothing is going to happen to you. It doesn't make any sense to me. Nothing happened to you before, and nothing is gonna happen now.

. . . .

Just please, you know what I'm saying, I want to see you, I miss you, . . . I miss holding you, I miss laying with you, I miss kissing you, everything will be fine. That's what you should be worried about . . . you need to worry about what's it is going to be like when I'm out there with you . . . are we are having fun, going out to eat . . . .

During a third visit, recorded a day after the deposition, Hall made the following statements:

I don't know what you want me to say. I'm scared to say anything. I got new charges. . . . The reason I'm so upset is cuz I love you more than you love me. You don't love me, you know what I'm saying. . . . No . . . you don't.

Hall also said the woman "spit in [his] face." He told her he had "three more new [] charges" and was "going to the joint."

6

At trial on the suborning perjury charges, the woman said Hall's repeated references to "church" where uncharacteristic of past conversations. It was her impression that Hall "was trying to get [her] not to go to the deposition."

The woman had the same impression when Hall brought up church in the second conversation. She testified that the two had discussed marriage and children, topics that were "very important to" her. She said she "was very emotional" and "[i]t just really upset [her]." Specifically, she had concerns about her relationship with Hall if she went to the deposition. In her words, "the way he was saying 'Don't go, don't go,' kind of made me think, 'Okay. If I do go, I'm going to upset him.' So that was the thoughts in the back of my head." She acknowledged that if she upset him, she would likely not have a future with him because "he would probably think that [she] betrayed him." She agreed that she felt guilt-tripped by Hall.

In describing the third conversation after the deposition, the woman testified Hall "was very upset with [her], very upset, very angry, kind of acting like it was [her] fault for everything." She agreed Hall wanted her to conceal information. Although the woman admitted Hall did not explicitly threaten her or promise any benefit if she did not go to the deposition, she testified he "placed pressure on [her] to not go to [the deposition]" and there was an implied threat that their relationship would be at risk if she attended. She said the consequence of attending the deposition was reflected in the third video, in which Hall accused her of not loving him. She agreed it made her feel guilty and bad.

The woman's trial testimony together with the three videos constitute substantial evidence in support of the elements of suborning perjury. Although

Hall is correct that he did not offer the woman money, he was not required to do so under the definition of inducement. In the alternative, the definition permitted proof that Hall provided "a reason which would influence, persuade, coax, encourage or invite a person to act." A reasonable juror could have found this prong was satisfied. We affirm the two findings of guilt for suborning perjury.

### B. Obstructing Prosecution

The jury was instructed the State would have to prove the following elements of obstructing prosecution:

> 1. On or about the afternoon [or evening] of May 5th, 2019, the defendant "induced" [a woman], a witness with knowledge "material" to the defendant's criminal case to fail to appear when subpoenaed.
> 2. The defendant's act was done with "specific intent" to obstruct prosecution of Kourtney Hall.

A reasonable juror could have found Hall did just that. Without belaboring the point, we are persuaded that substantial evidence supports the jury's findings of guilt for two counts of obstructing prosecution.

## II. Video Exhibits

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Iowa R. Evid. 5.403; *see State v. Buman*, 955 N.W.2d 215, 221 (Iowa 2021). "Weighing probative value against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make this judgment call.'" *State v. Thompson*, 954 N.W.2d 402, 408 (Iowa 2021) (quoting *State v. Putman*, 848 N.W.2d 1, 10 (Iowa 2014)). Our review is for an abuse of discretion. *State v. Williams*, 929 N.W.2d 621, 628 (Iowa 2019).

Hall argues the three jail videos were unfairly prejudicial.[2]  Specifically, he contends "[t]here was no reason for the jury to know that [he] was incarcerated," "[a]ny nonverbal observations of [him] were not relevant as these charges deal with verbal statements which can be observed without video," and "[t]he State could have played the audio alone."

It is true the videos depicted Hall in jail.  But the court instructed the jury to "make no inference as to the fact that the defendant was accused of another crime or that the defendant was in the State's custody."  The instruction mitigated the prejudicial effect of the jail setting.  *See State v. Plain*, 898 N.W.2d 801, 815 (Iowa 2017).

As for the nonverbal content in the videos, that content was highly relevant to all four charges.  Hall was clearly aware the calls were being recorded, and he used facial expressions to signal the importance of his request.  For example, at one juncture, he looked directly into the camera and blinked repeatedly.  He had strikingly different facial expressions in the first two videos, when he was attempting to cajole the woman into not attending the deposition, as compared to the third video, when he was explaining the consequences of her attendance.[3]  Audio alone obviously would not have captured those expressions.  *See State v. Davis*, No. 19-0929, 2021 WL 616148, at *11 (Iowa Ct. App. Feb. 17, 2021) (finding no abuse of discretion in the district court's admission of bodycam video where the

---

[2] The State raises an error-preservation concern with respect to the third video. We are not persuaded by that argument.

[3] Hall argues the third video should not have been admitted because the "[t]he visit occurred after the deposition."  True, but the video was highly probative because it depicted Hall's displeasure with the woman for attending the deposition.

district court noted that "the video in itself [could] be remedied with an instruction" and "the circumstances" were "a big part of the State's case").

We conclude the district court did not abuse its discretion in admitting the videos.

### III.    New Trial Motion

Hall argues "[t]he district court abused its discretion in overruling [his] motion for new trial because the jury's verdict is contrary to the weight of the evidence in this case."  "In contrast to a motion for new trial brought under the sufficiency-of-the-evidence standard, a motion for new trial brought under the weight-of-the-evidence standard essentially concedes the evidence adequately supports the jury verdict."  *Ernst*, 954 N.W.2d at 60 (citation omitted).  "A new trial is appropriate under a weight-of-the-evidence challenge only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.* (citation and internal quotations omitted).

After quoting the weight-of-the-evidence standard, the district court ruled as follows:

> [T]he evidence preponderates heavily in favor of the verdict rendered.  The Court listened to the evidence and recalls it distinctly, and there was considerable evidence, direct and circumstantial, supporting each and every element of the crimes that were charged and that the defendant was tried for.
>      There is no question in this case that it's even close, even a close call, even anywhere like that.  In this case there is plenty of evidence supporting each and every element of every charge that the defendant was tried for.  The evidence clearly supports the rendered verdict.  So the motion for new trial is denied.

We discern no abuse of discretion in the district court's ruling.

We affirm Hall's judgment and sentence for two counts of suborning perjury and two counts of obstructing prosecution.

**AFFIRMED.**